IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOKIM PITTS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 19 CV 4573 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO DETECTIVE H. BARSCH, UNKNOWN AND UNNAMED CITY OF CHICAGO POLICE OFFICERS, and THE CITY OF CHICAGO, | ) ) ) ) ) | Magistrate Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANTS'**
**RULE 56.1(a)(3) STATEMENT OF FACTS**

**The parties, venue and jurisdiction**

1. Plaintiff, Jokim Pitts, ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 1983 and Illinois State Law. *See* Plaintiff's First Amended Complaint ("FAC") ECF 72. The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331. Id. at ¶ 1.

   **RESPONSE**: Admit.

2. Venue is proper as the events giving rise to the alleged claims occurred within the Northern District of Illinois. Id. at ¶ 2.

   **RESPONSE**: Admit.

3. In his operative Complaint, Plaintiff alleges § 1983 claims of Unlawful Detention (Count I) and False Imprisonment (Count II)[2]. ECF 72.

   **RESPONSE**: Admit.

4. Defendant, Henry Barsch, was at all relevant times a duly appointed Chicago Police Detective who was on duty but was on break at his home during the events at issue in this lawsuit. ECF 72 ¶4, Exhibit A, Deposition of Henry Barsch, 31:4-23.

   **RESPONSE:** Admit that Barsch was a Chicago Police Detective at all relevant times, deny that Barsch was at his home for the entirety of the events at issue in this lawsuit. Barsch returned to Chicago Police Department and he used CPD resources to investigate the incident. *See* Plaintiff's Statement of Additional Facts at Paras. 3-11.

5. The City of Chicago is a municipal corporation located in the Northern District of Illinois and the employer of Defendant Barsch. ECF 72 ¶4-5.

   **RESPONSE:** Admit.

## Pitts' 2004 Armed Robbery

6. In June of 2004, Defendant Barsch was off duty driving to work when he observed what he believed to be Plaintiff point a firearm at a person's head while pulling on her purse. Ex. A, 10:17-11:8, 12:6-10.

   **RESPONSE:** Admit that this was his testimony, deny that Barsch observed "Plaintiff point a firearm at a person's head while pulling on her purse." Plaintiff did not point a firearm at a person's head and did not pull on anyone's purse. (Plaintiff's Dep. at pg. 95:21-96:8).

7. Defendant Barsch told Plaintiff to drop his firearm. Exhibit B, Deposition of Jokim Pitts, 96:6-15.

   **RESPONSE**: Admit.

8. Instead of dropping his firearm, Plaintiff told Defendant Barsch to drop his weapon. Ex. B, 96:16-17.

**RESPONSE**: Admit that this was his testimony, deny that this provides the full context. At the time of the event, Pitts was off-duty and driving a Cadillac, he did not identify himself as a police officer. In fact, the officer who arrived after Defendant Barsch shot Plaintiff initially pointed his gun at Barsch because it was not apparent he was a police officer. (Plaintiff's Dep. at 96:13-24).

9. Defendant Barsch observed Plaintiff threaten him with the gun. Ex. A, 12:4-5.

   **RESPONSE:** Deny, Plaintiff's testimony disputes this fact. (Plaintiff's Dep. at 96:13-24).

10. Defendant Barsch shot Plaintiff. Ex. A. 11:19-12:5, Ex. B, 98:15-19, 98:15-19, 159:13-16.

    **RESPONSE**: Admit.

11. Plaintiff was then arrested by other Chicago Police Officers, not Defendant Barsch. Ex. A. 12:11-20.

    **RESPONSE**: Admit.

12. Defendant Barsch testified to his observations of the events of that day at Plaintiff's criminal trial. Ex. A, 13:21-14:4, 74:17-20.

    **RESPONSE**: Deny. The testimony cited only supports that Defendant Barsch testified at Plaintiff's criminal trial and not wheat he testified to.

13. Defendant Barsch made an in-court identification of Plaintiff at the jury trial. Ex. A, 82:9-16.

    **RESPONSE**: Admit.

14. Plaintiff was convicted of armed robbery by a jury and sentenced to 21 years prison. Ex. A, 17:5-10, Ex. B, 97:4-17.

    **RESPONSE**: Admit.

15. Plaintiff was paroled in 2015. Ex. B, 97:20-98:5.

**RESPONSE**: Admit.

### March 13, 2019: Defendant Barsch's Residence

16. On March 13, 2019, Defendant Barsch was at his home in the City of Chicago. Ex. A, 21:7-10.

    **RESPONSE**: Deny as this statement is overly broad. Admit that Barsch testified that he was at home on March 13, 2019 in the "late afternoon hours." (Barsch Dep. at 21:7-14). He also returned to the station and remained there after his standard hours. *See* Plaintiff's Statement of Additional Facts Paras. 9-11.

17. Defendant Barsch was on-duty but at home for a meal break. Ex. A, 31:13-23.

    **RESPONSE**: Admit.

18. On that date there was knock on Defendant Barsch's house door and his 11-year-old son answered the door. Ex. A, 22:14-23:5.

    **RESPONSE**: Admit.

19. Defendant Barsch's son yelled for Defendant Barsch. Ex. A, 23:11-19.

    **RESPONSE**: Admit.

20. Defendant Barsch went to the door. *Id*.

    **RESPONSE**: Admit.

21. On the porch was a man in his 30's, approximately 5 feet 9 inches to six feet tall, larger build, unkept, with corn rows and facial hair and wearing an 8-ball leather jacket. Ex. A, 23:22- 24:10, 24:15-18, 24:24-25:1.

    **RESPONSE**: Deny. This testimony is contradicted by the evidence, Terese Cleary, Defendant Barsch's neighbor and an uninterested party, testified that the individual who was at Barsch's door was bald. (Cleary Dep. at 10:22-24).

4

22. The man asked Defendant Barsch if his car was for sale. Ex. A, 25:10-17, 27:20-24.

    **RESPONSE**: Admit.

23. Defendant Barsch's car was not for sale and he told the man no. *Id*.

    **RESPONSE**: Admit.

24. The man then said something to the effect of "I'll catch you later" or "I'll see you later". Ex. A, 25:15-17, 27:20-24, 78:18-79:4.

    **RESPONSE**: Admit that this was Barsch's testimony, deny any inference that this would constitute a threat.

25. The man then walked quickly to a silver-gray SUV and drove off. Ex. A, 28:10, 30:8-11, Exhibit F, Dep. of Terese Cleary, 10:15-12:15.

    **RESPONSE**: Deny as to the color of the SUV. When reporting the incident, Barsch identified the SUV as a dark gray Mercury. (Barsch Dep. 43:24 -44:21; Kenah Dep. at 19:15-19).

26. While Defendant Barsch was talking to the man, he believed it was Plaintiff. Ex. A, 27:6-19.

    **RESPONSE**: Deny, this is a disputed material fact. Defendant Barsch had not seen Plaintiff in 15 years so it is implausible that he believed the individual was Plaintiff. Moreover, there are discrepancies in the physical descriptions of the offender by Defendant and a disinterested third party which suggests Barsch is lying. *See* Plaintiff's Statement of Additional Facts Paras. 13; 35-36. This also misstates testimony, Barsch's testimony was that it might be Pitts because the individual reminded Barsch of him. (Barsch Dep. at 27:3-19).

5

27. Defendant Barsch was scared for his family's lives and considered the statements to be a threat. Ex. A, 81:8-11.

    **RESPONSE**: Deny, Barsch was never threatened by Plaintiff or anyone else on March 13, 2019. (Kenah Dep. at 54:9-11; Hill Dep. 17:15-21; Beck Dep. 16:1-6; Barsch Dep. at 60:4-5).

28. On March 13, 2019, Defendant Barsch considered himself and his son to be victims of a crime. Ex. A, 81:1-3, 83:8-24.

    **RESPONSE**: Deny, Barsch's son was not classified as a victim in the police reports. (Kenah Dep. at 50:20-22; 56:12-14).

### March 13, 2019: Police Station

29. After Plaintiff drove away from Defendant Barsch's residence, Defendant Barsch went to work. Ex. A, 21:24-32:3.

    **RESPONSE**: Deny. Plaintiff was never at Defendant Barsch's house, he was released without charges for the "stalking" charge because he had an alibi. (Kenah Dep. at 34:22-35:3; 99:16-18; Plaintiff's Dep. at 32:3-17).

30. When Defendant Barsch arrived at the police station, he checked the Illinois Department of Corrections ("IDOC") public website to determine if Plaintiff had been released from custody. Ex. A, 33:9-13, *see* https://www2.illinois.gov/idoc/Pages/OffenderSearch.aspx.

    **RESPONSE**: Deny this misrepresents the testimony, Barsch never testified that he searched the "public" IDOC website. Further deny the veracity of the statement, Plaintiff's parole ended in 2018 prior to the incident and thus information about his incarceration would no longer be on the IDOC website. (Plaintiff Dep. at 98:9-14). Rather, Defendant

6

> Barsch had his partner, Detective Hill, search the IDOC databases using his police credentials. (Hill Dep. at 39:23-40:14; 34:17-19; 43:9-44:14).

31. The IDOC website indicated that Plaintiff was no longer incarcerated. *Id*.

    **RESPONSE**: Deny the veracity of this statement. Plaintiff's parole ended in 2018 prior to the incident and thus information about his incarceration would no longer be on the IDOC website. (Plaintiff Dep. at 98:9-14). Also, Defendant Barsch had his partner, Detective Hill, search the IDOC databases using his police credentials. (Hill Dep. at 39:23-40:14; 34:17-19; 43:9-44:14).

32. Defendant Barsch then conducted a Google search of Plaintiff's name and located a photograph of Plaintiff. Ex. A, 33:24, 34:7-12.

    **RESPONSE**: Deny the existence of such a photograph is disputed. If there was a relevant photograph to the investigation it would be saved in the investigative file. (Hill Dep. at 52:18-53:15). Defendants provided a sworn affidavit stating that Detective Cikulin conducted a good faith and diligent search for the photograph and that to the best of his knowledge no such photograph exists. (*See* Plaintiff's Ex. K, Cikulin Affidavit).

33. Defendant Barsch believed the photograph of Plaintiff that he located via Google looked like the man on his porch. Ex. A, 35:3-6.

    **RESPONSE**: Deny the existence of such a photograph is disputed. If there was a relevant photograph to the investigation it would be saved in the investigative file. (Hill Dep. at 52:18-53:15). Defendants provided a sworn affidavit stating that Detective Cikulin conducted a good faith and diligent search for the photograph and that to the best of his knowledge no such photograph exists. (*See* Plaintiff's Ex. K, Cikulin Affidavit).

34. At the first available opportunity on March 13, 2019, he reported what had occurred at his residence to Sergeant Robert Beck, a supervisor of detectives in Area 2 of the Chicago Police Department. Ex. A, 32:4-15, 32:21-33:5, Exhibit C, Deposition of Robert Beck, 6:17-7:2, 11:13-16.

    **RESPONSE**: Deny. The incident at Barsch's house happened at approximately 4:20 p.m. and Barsch did not report the incident until 10:00 p.m. (Kenah Dep. at 49:8-50:4, Dep. Ex. 1; Beck Dep. at 42:15-43:11).

35. Defendant Barsch told Sergeant Beck that he believed the man on his porch was Plaintiff. Ex. A, 33:3-5, Ex. C, 16:1-6.

    **RESPONSE**: Deny as to Sergeant Beck's testimony as it did not state the "fact" alleged. Admit that Barsch testified he told Beck that he thought the individual at his door "could be" Pitts. Deny that Barsch genuinely believed it was Pitts as he provided false information to have Plaintiff arrested. *See* Plaintiff's Statement of Additional Facts Paras. 13-14; 16; 22-27.

36. Sergeant Beck told Defendant Barsch that the best way to document the incident was to make out a general offense case report for stalking. Ex. A, 38:5-11.

    **RESPONSE**: Deny, Sergeant Beck's testimony directly contradicts this "fact." Beck testified that he did **not** tell Barsch how to document the incident. (Beck Dep. at 14:22-15:8).

### Chicago Police Department's Investigation of Pitts

37. On March 13, 2019, as a supervisor of detectives in Area 2 of the Chicago Police Department, Sergeant Beck was responsible for making detective assignments. Ex. C, 6:24-7:2, 7:14-22.

8

**RESPONSE:** Admit.

38. Sergeant Beck opened an investigation and assigned Detective Patrick Kenah to investigate. Ex. A, 39:4-16, Ex. C, 15:15-16:10. Exhibit D, Deposition of Patrick Kenah, 14:5-11.

    **RESPONSE**: Admit that Beck assigned Kenah to the incident. However, deny the reason for assigning Kenah because there is conflicting testimony. Kenah testified that he was assigned only to write the police report. (Kenah Dep. 14:8-9; 36:24-37:2)

39. Sergeant Beck told Detective Kenah that a suspicious individual knocked on the door to Defendant Barsch's residence, his son answered, the individual stated he was attempting to buy a car, the individual then made a threat to Defendant Barsch and this individual was someone that Defendant Barsch had encountered several years before. Ex. C, 15:23-16:6, Ex. D, 15:1-7.

    **RESPONSE**: Deny. Beck never told Kenah that Plaintiff conveyed a threat to Barsch. (Kenah Dep. at 54:9-11; Hill Dep. 17:15-21; Beck Dep. 16:1-6; Barsch Dep. at 60:4-5). Rather, Beck testified that he told Kenah "That a suspicious man came on his porch attempting to buy a car, and he believed that was a guy he arrested years ago." (Beck Dep. at 16:4-6)

40. On March 13, 2019, Detective Kenah interviewed Defendant Barsch about the incident. Ex. D, 15:12-16.

    **RESPONSE**: Admit.

41. Defendant Barsch described the incident, described the suspicious individual, described the vehicle, and told Detective Kenah that he believed the suspicious individual was Plaintiff. Ex. D, 16:7-18:6.

9

**RESPONSE**: Deny that Barsch provided an accurate description of the individual and vehicle as there are conflicting descriptions. *See* Plaintiff's Statement of Additional Facts Paras. 13-14; 16; 22-27. Further deny that Barsch believed the suspicious person was Plaintiff due to the fact that he had not seen him in fifteen years and he provided false information about the description of the offender and vehicle which implies he knows it was not Plaintiff. *Id*; Paras. 35-36.

42. Detective Kenah showed Defendant Barsch a booking photo of Plaintiff to confirm the identity of the suspicious individual. Ex. D. 19:1-14.

    **RESPONSE**: Deny, this information is not contained in Detective Kenah's Original Case Incident Report, nor did Defendant Barsch corroborate that this occurred in his testimony. *see* Kenah Dep. Ex. 1.

43. Defendant Barsch told Detective Kenah that Plaintiff was driving a gray SUV. Ex. D, 19:15- 19.

    **RESPONSE**: Admit.

44. On March 13, 2019, Detective Kenah showed Defendant Barsch pictures of grey SUVs from the internet. Ex. D 19:24-20:11, 39:12-20.

    **RESPONSE**: Admit that this was Kenah's testimony but deny the veracity of the statement. There was nothing in Kenah's Original Case Incident Report that he showed Plaintiff grey SUVs (Kenah Dep. Ex. 1). Moreover, Defendant Barsch has now offered conflicting testimony on whether or not he identified the offender's vehicle as a gray Mercury, as at his deposition he now claims he was unable to identify the model of the car. (Barsch Dep. 45:1-2, 10-12; 15-20; 47:1-2). Thus, Barsch's description of the vehicle is a disputed material fact.

45. After looking at the photographs, Defendant Barsch identified the vehicle as a Mercury SUV. Ex. D. 39:24-40:2, 59:14-18.

    **RESPONSE**: Deny that Plaintiff looked at photographs. Admit that Kenah provide testimony that contradicted Barsch's testimony that he was unable to identify the vehicle as a Mercury. Defendant Barsch has now offered conflicting testimony on whether or not he identified the offender's vehicle as a gray Mercury, as at his deposition he now claims he was unable to identify the model of the car. (Barsch Dep. 45:1-2, 10-12; 15-20; 47:1-2). Thus, Barsch's description of the vehicle is a disputed material fact.

46. In March 2019, Plaintiff drove a Mercury SUV owned by his wife. Ex. B, 26:8-9, 34:1-6, 36:16-17, 116:4, 166: 8-14, 166:24-167:3, Exhibit G, Declaration of Detective Kevin Eberle, ¶6-8.

    **RESPONSE:** Admit.

47. On March 13, 2019, Detective Kenah accessed Plaintiff's driver's license information to obtain his current address. Ex. D, 24:24-25:5.

    **RESPONSE:** Admit.

48. Also on March 13, 2019, Detective Kenah used the Chicago Police Department CLEAR computer system to obtain information about Plaintiff. Ex. D, 10-17.

    **RESPONSE:** Admit.

49. During the investigation, Detective Kenah reviewed the police reports from the 2004 incident between Plaintiff and Defendant Barsch. Ex. D, 91:2-17 92:7-21.

    **RESPONSE:** Admit that Defendant Kenah testified that he reviewed the police reports for the 2004 incident between Plaintiff and Defendant Barsch,but deny the use of the word "investigation." The investigative alert for Plaintiff was issued solely based on Barsch's

11

"identification." (Kenah Dep. at 21:19-22). Detective Kenah did not independently verify Barsch's allegations against Plaintiff before issuing the investigative alert to arrest him. (Kenah Dep. at 22:13-24:23). Although it was possible to interview a suspect before issuing an investigative alert, Kenah failed to so because Barsch was a detective. )Kenah Dep. at 24:15-23).

50. Detective Kenah completed a case report. Ex. D, 21:11-12, 90:4-9, 87:4-8, 93:23-94:1.

    **RESPONSE:** Admit.

51. Detective Kenah believed that probable cause existed to arrest Plaintiff. Ex. D, 22:7-9.

    **RESPONSE:** Deny as no reasonable officer would believe that the offender committed the crime of stalking when provided information that the offender did not threaten Barsch. *See* Plaintiff's Statements of Material Facts at Paras. 1; 32.

52. Detective Kenah then consulted with Sergeant Beck and issued an investigative alert. Ex. D, 21:17-22:9, 86:16-18.

    **RESPONSE:** Deny. Beck was not even aware an investigative alert was issued in the matter. (Beck Dep. at 16:11-13; 16:23-17:2).

53. The decision to issue the investigative alert was made entirely by Detective Kenah. Ex. D, 21:17-24, 86:16-18.

    **RESPONSE:** Deny, Defendant Barsch was involved in the decision to pursue stalking charges against Plaintiff. (Barsch Dep. at 38:5-11).

54. On March 14, 2019, Detective Kenah and other detectives conducted a canvass of Defendant Barsch's neighborhood. Ex. D, 26:10-27:1, 27:15-24.

    **RESPONSE:** Admit but deny the significance, Plaintiff had already been arrested at the time of the canvass. (Kenah Dep. at 26:21-27:3; 103:18-104:4).

55. Detective Kenah viewed a video from a camera on the middle of Defendant Barsch's block as part of his investigation. Ex. D, 14-21.

    **RESPONSE:** Admit.

56. Plaintiff was arrested on March 14, 2019, outside of his home near a grey Mercury SUV owned by his wife. Ex. D, 25:18-20, 34:23-35:8, Ex. G, ¶6.

    **RESPONSE:** Admit.

57. On March 14, 2019, Plaintiff was interviewed at the police station by Detective Kenah and Detective Todd Gillerlain. Ex. D, 30:17-6.

    **RESPONSE:** Admit.

58. Detective Gillerlain was the lead detective for the investigation. Ex. D, 90:10-18.

    **RESPONSE:** Admit this was Kenah's testimony.

59. Plaintiff denied going to Defendant Barsch's home and told detectives he was at work at the time of the incident. Ex. D, 32:24-33:4.

    **RESPONSE:** Admit.

60. Detectives investigated Plaintiff's alibi by speaking with his employer, verified that Plaintiff was signed/clocked in at work at the time of the incident and Plaintiff was released without being charged. Ex. D., 31:20-32:2, 34:19-21, 35:2-3 Exhibit E, Deposition of Karen Pioli, 51:2-17, 51:22-52:2.

    **RESPONSE:** Admit.

61. Although Plaintiff was signed in/clocked in at work, he was permitted to leave work for breaks, meals or other reasons without seeking permission. Ex. E., 17:12-17, 18:2-24.

    **RESPONSE:** Deny this statement misstates testimony. Karen Pioli testified that her employees have scheduled breaks. (Pioli Dep. at 17:4-11) Also, she testified that if

someone left the floor without permission the other employee would have to report them which suggests that leaving without seeking permission was not permitted. *Id*. at 19:1-10).

62. According to Plaintiff's employer, Plaintiff could have left work for three to four hours in the middle of his shift without his employer knowing. Ex. E, 60:6-15.

**RESPONSE:** Admit that this was the testimony but deny that this was a complete statement. Karen Pioli also testified that she is not aware of any instances where an employee has left for multiple hours during a shift and it is possible to know when an employee left because of the security cameras and there were 15 to 35 other employees at any given time who would have to report the employee leaving. (Pioli Dep. at 19:1-17; 60:16-19).

63. Detective Kenah believes the investigation of this matter was consistent with Chicago Police Department policies. Ex. D, 36:16-21.

**RESPONSE:** Admit this was his testimony, deny that it was consistent with policy as there was no evidence of a threat so pursuant to CPD policy the incident should not have been charged as stalking. *See* Plaintiff's Statement of Additional Facts at Paras. 1; 32.

64. Detective Gillerlain told Defendant Barsch that Plaintiff stated it could have been Plaintiff's brother, not Plaintiff, who went to Defendant Barsch's residence. Ex. A, 64:11-19.

**RESPONSE**: Deny, this is unsupported by the evidence. Kenah testified that the report authored by Gillerlain relating to the interview of Pitts was an accurate representation of the interview and there is nothing in the report about Plaintiff's brother. (Kenah Dep. 79:16-80:12, Dep. Ex. 3).

65. The investigation of this incident was not influenced by the fact that Defendant Barsch's was employed by the Chicago Police Department. Ex. D, 24:1-9, 37:8-14, 86:22-24.

    **RESPONSE:** Deny. Detective Kenah admitted that it was possible to investigate a suspect before issuing an investigative alert but for the incident at issue it was imperative that Plaintiff be arrested because the case was serious since it involved a detective. (Ex. C, Kenah Dep. at 24:15-23).

66. Defendant Barsch's only role in the investigation was providing information about the incident which occurred at his home on March 13, 2019. Ex. A, 80:10-24, Ex. D, 99:19-100:7.

    1. **RESPONSE:** Deny. Defendant Barsch investigated the identity of the unknown offender in his capacity as a detective and utilized Chicago Police Department databases to do so. *See* Plaintiff's Statement of Additional Facts at Paras. 3-11. Defendant Barsch was involved in the decision to pursue stalking charges against Plaintiff. (Barsch Dep. at 38:5-11). Defendant Barsch admits that he engaged in investigatory work to identify the suspect. (Ex. A, Barsch Dep. Ex. 1, Interrogatory Responses No. 5).

67. Defendant Barsch never authored any police reports or requests for investigative alerts as it relates to the March 13, 2019, incident. Ex. A, 80:10-12, Ex D, 99:19-20, 86:22-24.

    **RESPONSE:** Admit.

68. Defendant Barsch did not participate in any canvass of his neighborhood. Ex. D, 30:13-16.

    **RESPONSE:** Admit but deny the significance, Plaintiff had already been arrested at the time of the canvass. (Kenah Dep. at 26:21-27:3; 103:18-104:4).

69. Defendant Barsch did not interview Plaintiff or tell other detectives which questions to ask. Ex. D, 30:17-31:6, 100:5-7.

**RESPONSE:** Admit.

70. Defendant Barsch never directed or pressured any detectives to take any action in this matter. Ex. A, 62:13-24, Ex. D, 86:22-24.

    **RESPONSE:** Deny, Defendant Barsch was involved in the decision to pursue stalking charges against Plaintiff. (Barsch Dep. at 38:5-11).

71. Defendant Barsch was not an investigative detective for the March 13, 2019, incident. Ex. A, 81:4-7.

    **RESPONSE:** Deny. Defendant Barsch investigated the identity of the unknown offender in his capacity as a detective and utilized Chicago Police Department databases to do so. *See* Plaintiff's Statement of Additional Facts at Paras. 3-11.

72. Defendant Barsch did not arrest Plaintiff and was not present for his arrest on March 14, 2019. Ex. A, 62:3-9, 62:14-24.

    **RESPONSE:** Admit that Defendant Barsch was not physically present when Plaintiff was arrested, deny any inference that Barsch did not direct Plaintiff to be arrested. *See* Plaintiff's Statement of Additional Facts at Paras. 18; 40.

Respectfully submitted,

By: /s/ Jaclyn N. Diaz
Jaclyn N. Diaz
ED FOX & ASSOCIATES, LTD.
300 W. Adams Street, Suite 330
Chicago, Illinois 60606
(312) 345-8877
jdiaz@efoxlaw.com